IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

CRYSTAL CAMPBELL, as Special Administratrix of the
Estate of Billy Joe Campbell, deceased                                              PLAINTIFF

v.                                   No. 3:15-cv-9-DPM

THE UNITED STATES OF AMERICA                                              DEFENDANT

AMENDED COMPLAINT

Crystal Campbell, special administratrix of the estate of Billy Joe Campbell, deceased, by her attorneys, The Brad Hendricks Law Firm, for her amended complaint, states:

1. Plaintiff brings this cause of action under the provisions of Title 28, United States Code Section 2671 and amendments thereto, commonly known as the Federal Tort Claims Act. Plaintiff, Crystal Campbell, resides at 106 Walnut Street, Brookland, Arkansas.  The incident which gives rise to this action occurred at ARcare Jonesboro North in Jonesboro, Craighead County, Arkansas, a federally funded medical clinic operated by the U.S. Dept. of Health and Human Services. Jurisdiction and venue are based on 28 U.S.C. Section 1402.

2. On June 4, 2014, Plaintiff mailed a formal claim to the U.S. Dept. of Health and Human Services as required under the Federal Tort Claims Act. The claim was received on June 9, 2014.  More than six months had expired since Plaintiff filed that claim.  Consequently, pursuant to 28 U.S.C. Section 2675, Crystal Campbell filed her lawsuit on January 12, 2015.

3. Crystal Campbell is the surviving wife of Billy Joe Campbell and is Special

Administratrix of the Estate of Billy Joe Campbell, having been so appointed on March 11, 2014, by the Craighead County Circuit Court. Crystal Campbell lives in Brooklyn, Craighead County, Arkansas. At the time of his death, Billy Joe Campbell, lived in Craighead County, Arkansas.

   4. Terry Hunt, M.D., is a physician licensed to practice medicine in the state of Arkansas and who practices medicine at ARcare Jonesboro North in Jonesboro, Craighead County, Arkansas. Dr. Hunt is an employee of ARcare Jonesboro North for whom the defendant is vicariously liable under the FTCA.

   5. Renata Vaughn, APN, is a nurse practitioner licensed as an advanced practice nurse by the state of Arkansas. Nurse Vaughn practices nursing at ARcare Jonesboro North in Jonesboro, Craighead County, Arkansas. Nurse Vaughn is an employee of ARcare Jonesboro North for whom the defendant is vicariously liable under the FTCA.

   6. ARcare operates federally funded heath centers in Arkansas. ARcare operates family medical clinics in northeast Arkansas including ARcare Jonesboro North in Jonesboro, Arkansas, where Dr. Hunt and Nurse Vaughn are employed. Billy Joe Campbell received medical treatment from Dr. Hunt and Nurse Vaughn at ARcare Jonesboro North in Jonesboro, Arkansas. Under Section 224 of the Public Health Service Act, as amended by the Federally Supported Health Centers Assistance Act of 1992 and 1995, employees of eligible health centers are deemed to be federal employees qualified for protection under the FTCA.

   7. On August 1, 2013, Billy Joe Campbell saw Dr. Hunt at ARcare Jonesboro North. He complained of headaches, blurred vision, weakness, prolonged healing of cuts and bruises, and hematuria (blood in his urine). A urinalysis was performed in the office and was positive for

blood and leukocytes (white blood cells).  He was felt to have a urinary tract infection and was given Bactrim.  He was also treated for hypertension.  A complete blood count ("CBC") was also sent to Lab Corp that day and returned the following day.  The CBC showed anemia and thrombocytopenia, a low blood platelet count.  (Platelets (thrombocytes) are colorless blood cells that play an important role in blood clotting.  Platelets stop blood loss by clumping and forming plugs in blood vessel holes.)  A white blood cell count was not performed by the lab as there was "cell degeneration."

      8. On August 2, 2013, Mr. Campbell's blood work returned with some critical levels, especially those of low platelets.  Due to an unknown factor, the CBC could not be completely performed by the lab.  At this time Dr. Hunt placed an order for specialist appointment with hematology/oncology.

      9.  Late in the afternoon on August 9, 2013, Mr. Campbell, accompanied by his wife, returned to the clinic for the follow-up appointment.  He saw Renata Vaughn, APN at this appointment.  The stated purpose for the visit was lab results on the chart.  There is no documentation of any discussion regarding the lab results from the previous visit.  Nurse Vaughn notes that the urinary symptoms were better, however, that he was still experiencing gross blood in his urine.  Mr. Campbell also reported to her that he was still experiencing the bruising, fatigue, malaise, blurred vision and headaches.  She ordered more lab work that afternoon.

      10.  In the morning of August 12, 2013, Mr. Campbell presented to the clinic to have labs drawn.  Later that morning he was feeling nauseated, having bad headaches and was having worsening of vision.  A co-worker transported him via private vehicle to Crittenden Memorial Hospital for evaluation.  To rapidly assess his complaints, labs and a CT scan of his brain,

without contrast, were ordered. It was revealed by the CT scan that Mr. Campbell's headaches, dizziness, and blurred vision were due to an intracranial hemorrhage. CBC once again showed thrombocytopenia. Due to worsening of Mr. Campbell's condition and inadequate specialists available, Mr. Campbell was transferred to a tertiary care multi-specialty institution, Methodist Hospital of Germantown in Memphis, Tennessee.

11. Upon arrival at Methodist Hospital, Billy Joe Campbell was unresponsive. He was seen immediately by neurosurgery and was noted to have increased intracranial pressure. An external ventricular drain was placed. He was also seen by hematology and diagnosed with probable acute promyelocytic leukemia and disseminated intravascular coagulation ("DIC"), which is a serious disorder in which the proteins that control blood clotting become over active. He received platelets, fresh frozen plasma and cryoprecipitate (a frozen blood product prepared from plasma). Despite aggressive therapy, Mr. Campbell's neurological status declined and on August 13, 2013, he was declared brain dead. Mr. Campbell died later that day following withdrawal of life support.

12. Mr. Campbell's August 9, 2013 CBC was inexplicably reported on August 15, 2013, after his death. This showed an elevated white blood cell count with blast cells, as well as thrombocytopenia and anemia.

13. Nurse Vaughn's care on the visit date of August 9, 2013 fails to meet the standard of care. Nurse Vaughn failed in numerous aspects regarding the care of Mr. Campbell. First, she failed to properly review the notes from the previous visit to know even what the purpose of the visit was for, even though the notes from the visit on August 1, 2013 were readily available for her to review prior to the encounter with Mr. Campbell. Nurse Vaughn failed to recognize the

clinical importance of the glaring critically low platelet result on the lab work from the prior week and to formulate a differential diagnosis as to the cause. She mentions in her deposition that there was the possibility of the low platelet count being a lab error. If she would have reviewed the previous encounter and performed a physical exam on Mr. Campbell, it would have been very obvious from the clinical findings that this was indeed an accurate result which needed immediate attention. Nurse Vaughn stated in her deposition that she was not very familiar with the lab draw and resulting times for labs, and this failure to order and ensure the labs being done in a timely fashion led to a delay of two and a half days before the labs were even drawn. The labs were resulted to Nurse Vaughn after Mr. Campbell had expired. Nurse Vaughn clearly acted below the standard of care by failing to review previous encounter, not speaking with Dr. Hunt or a collaborating physician for insight, not performing a physical exam and formulating a differential diagnosis, and not being familiar with the lab draw and pick-up schedule.

14. ARcare Jonesboro North, as an institution, failed to meet the standard of care on several instances in the case. Dr. Hunt reviewed the results of the labs on August 2, 2013 and ordered a referral to be made to a hematologist/oncologist for specialty consultation due to critically low platelet count. There is no evidence that the referral was ever placed, nor any communication from the secretary about delays in scheduling this referral appointment. Also, it is not until August 6, 2013 that there are documented phone messages to Mr. Campbell about abnormal labs and the need to schedule a follow-up visit to the clinic to discuss these lab results and to draw more labs. That is four (4) days after the labs were resulted. This delay is partially responsible for the ultimate dismal prognosis upon the diagnosis of promyelocytic leukemia. Also, ARcare failed to schedule this appropriate follow-up appointment time for an encounter

such as lab results and redraw. Nurse Vaughn states in her deposition that labs were not drawn on Friday afternoons since there would be no pick-up until Monday. For a visit regarding abnormal lab results, this visit should have been scheduled at a time when the labs could be drawn and sent to the lab that day. All these factors delayed prompt care by at least one week and hastened the death of Mr. Campbell. For these reasons, ARcare Jonesboro North failed to meet the standard of care.

14. In summary, both ARcare and Nurse Vaughn fell well below accepted medical standards in regards to the failure to appropriately evaluate a patient with signs and symptoms of leukemia who had a markedly decreased platelet count on August 2, 2013. Given the high cure rate of acute promyelocytic leukemia (remission rates with chemotherapy are 93%, with 100% of these patients surviving five years), it is likely that earlier diagnosis would have prevented the development of DIC, subsequent intraparenchymal hemorrhage and Mr. Campbell's death.

15. Plaintiff, Crystal Campbell, in her capacity as Special Administratrix of the Estate of Billy Joe Campbell, seeks the following damages on behalf of the estate:

    (a)    Medical expenses;

    (b)    Funeral and burial expenses;

    (c)    The pain and anguish and suffering that Billy Joe Campbell suffered prior to his death; and,

    (d)    Damages for the value of the loss of Billy Joe Campbell's life.

16. Plaintiff, Crystal Campbell, in her capacity as Special Administratrix of the Estate of Billy Joe Campbell, seeks the following damages on behalf of the wrongful death beneficiaries:

(a) Damages for the mental and emotional anguish suffered by each as a result of the death of Billy Joe Campbell; and

(b) Pecuniary loss any wrongful death beneficiary has or will suffer as a result of the death of Billy Joe Campbell.

WHEREFORE, Plaintiff prays for judgment against the defendant in an amount adequate to compensate for the damages sustained, which damages exceed the federal jurisdictional limits in diversity of citizenship cases. Plaintiff further asks for costs, and other relief to which she may be entitled.

Respectfully submitted,

**THE BRAD HENDRICKS LAW FIRM**
500 C Pleasant Valley Dr.
Little Rock, AR  72227
(501) 221-0444
(501) 219-0608 (fax)

BY: /s/ George R. Wise, Jr.
GEORGE R. WISE, JR., ABN 78171

CERTIFICATE OF SERVICE

I, George R. Wise, Jr., do hereby certify that a copy of the foregoing was sent via the f-file system to the persons listed below, May 11, 2016:

Lindsey Mitcham Lorence, Esq.
Assistant United States Attorney
P. O. Box 1229
Little Rock, AR  72203

/s/ George R. Wise, Jr.
GEORGE R. WISE, JR.